# 2007 DTA 101

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE UTUADO**
**PANEL XI**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

ROBERTO VERA MONROIG
· Recurrido

Núm. KLCE-07-00572

San Juan, Puerto Rico, a 13 de agosto de 2007

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Jueza Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos, en representación del Pueblo de Puerto Rico, el Lcdo. César López Cintrón, Fiscal Especial Independiente, y además, la Lcda. Ivette Aponte Nogueras, Fiscal Delegada (los peticionarios o el Ministerio Público). Nos solicitan que revisemos el dictamen emitido por el Hon. Alvin D. Rivera Rivera, Juez del Tribunal de Primera Instancia (TPI), Sala Superior de Utuado, tras la celebración de una vista el 30 de marzo de 2007 que culminó con la reconsideración de un fallo condenatorio que había pronunciado previamente el referido juzgador en contra de Roberto Vera Monroig (el recurrido).

Con el beneficio de la comparecencia de las partes y de la transcripción de los procedimientos ventilados ante el foro recurrido, expedimos el auto de *certiorari* solicitado, dejamos sin efecto el fallo absolutorio emitido en reconsideración y devolvemos el caso al TPI para que se proceda conforme a lo que más adelante se señala.

**I**

Esbozamos a continuación una breve relación de los hechos e incidencias procesales más relevantes de este caso.

Luego del pronunciamiento del fallo de culpabilidad por la comisión de hechos constitutivos de actos lascivos, ██ según el Artículo 105 del Código Penal de 1974, el recurrido -ex alcalde del Municipio de Adjuntas- fue referido a la oficina de oficiales sociopenales para que se preparara un informe presentencia. Posteriormente, llegado el día del señalamiento para el pronunciamiento de sentencia, el TPI le anunció a las partes su intención de convertir dicho acto en uno particular. Lo anterior, ya que el informe presentencia le arrojaba dudas sobre la culpabilidad del recurrido. Siendo ello así, el TPI procedió a señalar un procedimiento posterior para dilucidar dicha inquietud. Cuando finalmente se celebró el referido procedimiento posterior, el mismo culminó con la "*reconsideración*" del fallo condenatorio. Esto, con el efecto práctico de absolver al recurrido.

En la vista originalmente pautada para el pronunciamiento de sentencia, el TPI expresó que había ordenado **personalmente** la citación de la oficial probatorio que preparó el informe presentencia, ya que quería que se dirimiera un dato muy importante que surgía de dicho informe. Lo último, en relación a la información que proveyó la parte perjudicada en el caso (Bárbara Bernard Ríos) a la oficial. Indicó también que desde que leyó esa información no dejó de pensar si la decisión que había tomado en el caso era la correcta.

Además de lo anterior, el juzgador señaló que, en el juicio, el testimonio de la perjudicada se circunscribió a que el recurrido había ido donde ella y le había instado a que fuera a su oficina, y que entonces, sin ella esperárselo, el recurrido incurrió en la conducta constitutiva de actos lascivos. Seguido, destacó que en el informe presentencia, la oficial probatorio consignó que tras entrevistarse con la perjudicada, esta última indicó "*que los hechos le afectaron, ya que esperaba que el señor Vera [el recurrido] reaccionara de la forma que lo hizo ante una solicitud de trabajo que le hizo*".

En la misma vista, y respecto a esa información, el TPI comentó que creía que lo que podía decir era que la perjudicada "*no esperaba reaccionara de la forma que lo hizo ante una solicitud de trabajo que lo [sic.] hizo*".

Apuntó, no obstante, que:

*"[...] [L]as razones que ella dio para estar en esa oficina no fue que ella fuera hacer una gestión de trabajo. Al contrario, esa fue la prueba y yo descarté el testimonio de la defensa de que ella es la que se persona a esa oficina sobre una gestión de trabajo. Y entonces yo adjudico credibilidad a una testigo que me trae a mi mente que la conducta del acusado que estaba premeditada cuando desde temprano en la mañana [...] la invita a pasar a su oficina y que con sus palabras ya se veía lo que venía y entonces de momento aquí me encuentro en el informe que estas palabras pueden coincidir con [...] testimonios de testigos de defensa que yo descarté. [...] [Y]o he repasado en mi mente la prueba que yo tuve ante mí y parte de los testimonios o del testimonio yo lo volví a escuchar, porque el sistema que tenemos aquí provee para que nosotros le demos a unos botones y escuchemos el testimonio, en el caso que sea en cualquier momento. [...] Y ese dato crea insatisfacción en la decisión que yo he tomado. Y desde el punto de vista procesal fíjese que yo no he dictado sentencia. Y las Reglas de Procedimiento Criminal proveen [...] para procesos presentencia ante [sic.] de la sentencia cuando el argumento puede ser traído por el acusado, pero cuando la inquietud sobre la decisión surge [...] del propio juzgador de hechos en este caso por el Tribunal de Derecho, porque no es peor por Jurado, las circunstancias según las reglas procesales podrían ser distintas, pero es que, yo vi este caso por Tribunal de Derecho y yo no he dictado sentencia".* ■

El Ministerio Público objetó en la vista lo señalado por el TPI, esto es, lo de citar a la oficial probatorio para dilucidar la alegada preocupación del juzgador sobre la información contenida en el informe presentencia. Ello, en relación a las declaraciones sobre los hechos que consignó la oficial y que atribuyó a la perjudicada. **Argumentó el Ministerio Público que no encontró disposición reglamentaria que proveyera para una reconsideración de un fallo sin que se hubiera solicitado.** Añadió que desconocía qué disposición legal regiría el procedimiento que proponía celebrar el tribunal. El Ministerio Público solicitó entonces que, al menos, no se entrevistara a la oficial probatorio ese día y que se le citara para una vista posterior en la que compareciera también la perjudicada. ■

Por otra parte, la representación legal de la defensa expresó que un fallo se podía reconsiderar por el magistrado que lo había dictado *"en cualquier momento antes de dictarse sentencia"*. Añadió que en el referido señalamiento, venían *"en el ánimo de pedirle al Tribunal que reconsiderara su fallo"*.■ También se opuso a que compareciera la perjudicada. Se insistió en que el contenido del informe presentencia era bien elaborado y completo, y que de permitirse que la perjudicada compareciera a testificar, se prestaría para que ella negara *"lo que le dijo"* a la oficial sociopenal o probatorio. No obstante su objeción, el TPI ordenó la citación de la perjudicada y respondió que era su responsabilidad **adjudicar credibilidad** (entre la oficial y la perjudicada). ■

Posteriormente, el Ministerio Público vertió en una moción sus objeciones al procedimiento que proponía celebrar el TPI. La representación legal del recurrido se opuso. Seguido, el Ministerio Público solicitó que se citaran a otras personas para que testificaran en la vista que señaló el TPI para evaluar el testimonio de la oficial probatorio que tramitó el informe presentencia. ■ El TPI le pidió que justificara la necesidad y pertinencia de los testimonios que ofrecerían tales personas.

Mediante moción, el Ministerio Público explicó que se proponía controvertir las entrevistas realizadas por la oficial probatorio. **También, indicó que se proponía establecer que el informe rendido se apartaba de los requisitos, procedimientos y protocolos exigidos por la Regla 162.1(a) de Procedimiento Criminal.** Además, establecería las **circunstancias anómalas** bajo las cuales la oficial probatorio rindió el informe, así como otra información pertinente y necesaria para la justa adjudicación de los asuntos que estaban pendientes de consideración del TPI, relacionadas al informe presentencia.

Llegado el día señalado para la celebración de la vista, 30 de marzo de 2007, el Ministerio Público reiteró su objeción al procedimiento provisto por el TPI y su propósito. ■ Una vez iniciado el procedimiento, el TPI interrogó a la oficial probatorio. A sus preguntas, aquélla respondió que se le asignó el caso el 30 de noviembre de 2006, no obstante, no fue sino hasta el 17 de enero de 2007 que entrevistó al recurrido. ■ A la perjudicada la entrevistó el 19 de enero de 2007 (luego surge que fue el 18 de enero de 2007). La entrevista fue telefónica, dado que la perjudicada ya no residía en Puerto Rico. A preguntas del Ministerio Público declaró que la entrevista se limitó a unos (7) minutos. ■ La oficial probatorio declaró que aunque ella fue quien tomó las notas de la entrevista con la perjudicada, y además, fue quien redactó el borrador del informe presentencia (a manuscrito), **ella no fue quien redactó y firmó el informe que finalmente se presentó ante el TPI.** ■ Adujo que no tuvo contacto con el informe presentencia *"final"*, sino hasta después de que el TPI le informó que sería citada para comparecer y declarar en relación al contenido del informe. ■

En lo que respecta a la preparación del informe y su presentación al TPI para el procedimiento que se celebró, la oficial probatorio comentó lo siguiente. El 17 de enero de 2006 fue cuando por primera vez entrevistó al recurrido. ■ En esa misma ocasión fue cuando le dio la cita a aquél para que el 8 de febrero de 2006 visitara el Instituto de Reeducación para ofensores sexuales. Al día siguiente, 18 de enero de 2006, entrevistó a los padres de la perjudicada y a la perjudicada. Mientras, el 19 de enero de 2006, redactó el informe (a manuscrito). ■ El informe final se presentó al TPI el 23 de enero de 2006.

Declaró que se le llamó la atención por haber dejado de incluir en el informe la parte relacionada a las *"recomendaciones"*. Añadió que el día en que se redactó el informe final, ella no se encontraba en la oficina, sino que se encontraba trabajando fuera (en el campo). Por ello, se le encargó la redacción final a otra oficial probatorio. Esta última leyó el informe y lo firmó a su nombre (esto es, firmando con el nombre de la oficial probatorio que originalmente redactó el informe a manuscrito). ■

A la oficial probatorio que redactó originalmente el informe se le citó para el señalamiento de 24 de enero de de 2006. Ya en sala, el TPI le informó a aquélla que sería citada para vista. ■ Fue entonces cuando la oficial probatorio leyó el informe final.

**Indicó que cuando finalmente leyó el informe, advirtió que había un error en la redacción.** En la parte del informe titulado *"actitud de la parte perjudicada"*, se consignó que:

*"[...] [L]a Señora Bárbara Bernard Ríos, perjudicada en el caso, fue entrevistada vía teléfono, la cual no se encuentra en Puerto Rico. Nos indicó que a los hechos le afectaron, ya que esperaba que el señor Vera no reaccionara de la forma que lo hizo."*

Seguido, añadió que el texto debía leer que *"no esperaba que él reaccionara de la forma en que lo hizo"*. ■

El TPI volvió a preguntar sobre el texto en controversia. El referido foro señaló:

*"[...][H]ay una parte en particular que a este Tribunal le llama la atención, y es que al final de esa oración dice: "que lo hizo", dice "nos indicó que los hechos la afectaron, ya que debe decir no esperaba que el señor Vera reaccionara de la forma que lo hizo ante una solicitud de trabajo que le hizo". ¿Eso está correcto, esa oración está correcta, fuera de la salvedad que se ha hecho?"* ■

El foro preguntó reiteradamente si podía interpretarse que fue la perjudicada quien le hizo una solicitud de trabajo al recurrido y que ello fue entonces lo que motivó que aquél la llamara a su oficina. **La oficial probatorio aclaró que esa interpretación no era correcta.** Afirmó que fue el recurrido quien llamó y procuró que la perjudicada fuera a su oficina. La perjudicada, más bien, fue donde el recurrido en el entendido de que

podía ser para discutir una cuestión de trabajo, ya que sí había hecho saber que estaba por terminarse el contrato mediante el cual tenía empleo con el Municipio. ■■■

Por otra parte, a preguntas del Ministerio Público, la oficial probatorio reconoció que: no existían las notas originales en las que consignó lo que habló con la perjudicada cuando la entrevistó por teléfono; la entrevista duró unos (7) minutos; **dejó de incluir en el informe datos** relacionados al efecto emocional o económico que hubiera sufrido la perjudicada o su familia por los hechos objeto del procedimiento –ello aun cuando tiene conocimiento de que incluir esa información en el informe presentencia es un requisito de ley; **no consultó con la sicóloga que atendió a la perjudicada** para obtener información sobre el efecto emocional de la perjudicada por los hechos; se refirió al recurrido al Instituto de Reeducación de Puerto Rico (para agresores sexuales) para una **fecha posterior** al señalamiento de pronunciamiento de sentencia; lo último, aun cuando la información que se obtuviera de la evaluación que allí le realizaran al recurrido debía tomarse en cuenta para incluirse en el informe presentencia. Por último, aceptó que la perjudicada no le solicitó al recurrido citarse con él en su oficina. ■■■

Agregó la oficial probatorio que llegó a declarar al tribunal porque recibió la citación del referido foro. También reconoció que en su experiencia no es usual o frecuente que el tribunal cite a un técnico sociopenal u oficial probatorio al acto de pronunciamiento de sentencia de las personas que investiga para efectos de rendir el informe presentencia. **También estuvo de acuerdo en que el hecho de que la citaran le llamó la atención y que consultó la situación con su supervisora.** Su superior, según declaró, se limitó a señalarle que compareciera, pues el juez había indicado que compareciera con todo el expediente incluyendo sus notas sobre la investigación. ■■■

Además de lo anterior, la oficial probatorio apuntó que **fue apresurada para que se rindiera el informe.** Trajo a colación que el 18 de enero de 2006 una de sus compañeras se comunicó con ella al celular y le indicó que **se había recibido una llamada del Tribunal.** El referido foro requirió que se entregara el informe lo más rápido posible, incluso, si era posible, **para el día siguiente** de la llamada (19 de enero de 2006). Reconoció que el hecho de que el TPI llamara a estos efectos tuvo que ver con que ni ella ni su supervisora pudieran revisar y firmar el informe presentencia final que fue presentado al TPI. Como dijo antes, el informe lo firmó a su nombre una de sus compañeras. ■■■

Seguido, el Ministerio Público destacó que el 29 de noviembre de 2006, finalizado el juicio, se probó al TPI más allá de duda razonable que el recurrido había cometido los hechos imputados, y que por ello, el TPI lo había encontrado culpable. **También, se llamó la atención al hecho de que el TPI había vertido para récord unas manifestaciones que acreditaban su convencimiento de la culpabilidad del recurrido.** ■■■ No obstante, se trajo a colación que el 26 de enero de 2007, cuando estaba señalada la vista para el pronunciamiento de sentencia, fue que el TPI vino a expresar que cierta información contenida en el informe presentencia le había traído duda sobre la culpabilidad del acusado por lo que solicitó la comparecencia de la oficial probatorio para escucharla.

Destacó el Ministerio Público que en esa ocasión se le mencionó al TPI que el procedimiento que se proponía celebrar no estaba basado en petición alguna, fuera mediante el mecanismo de moción de reconsideración o de nuevo juicio. También se adujo que ese procedimiento no estaba regulado por disposición alguna. **Se agregó que la evidencia que se pasó finalmente durante el procedimiento *"posterior"* al fallo condenatorio, pero previo al pronunciamiento de sentencia, acreditó que lo que se consignó en el informe presentencia no fue lo que dijo la perjudicada.** Se mencionó cómo las declaraciones de la oficial probatorio se dirigieron a aclarar que aunque en el informe decía que la perjudicada había ido a solicitarle empleo al recurrido, eso no era lo que quería decir y que **eso no era lo que debía decir allí.** ■■■

**Además de lo anterior, indicó el Ministerio Público que lo que el TPI le estaba solicitando con la**

**celebración del procedimiento posterior al fallo era que se volviera a probar la culpabilidad del recurrido más allá de duda razonable y que eso era algo no sólo irregular, sino ilegal.** Destacó que con ello se estaba dejando sin efecto un fallo sin que fuera solicitado. Adujo que el juicio ya había terminado y lo que procedía era el pronunciamiento de la sentencia.

Por otro lado, el TPI le preguntó al Ministerio Público si aún cuando no se había dictado sentencia, y el tribunal se daba cuenta de que un testigo había mentido sobre un elemento esencial, debía condenar a una persona. [24] **El Ministerio Público indicó que su posición era que el momento de adjudicar si alguien estaba mintiendo era cuando se estaba viendo el juicio.** ▪

Agregó el Ministerio Público que lo que se demostró durante el procedimiento que se celebró fueron deficiencias en el informe presentencia y que el TPI lo que hacía era cargarle esas deficiencias a la perjudicada. **Esto es, se adujo que lo que hacía era atribuirle a la perjudicada algo que el tribunal entendía que era falso cuando ella no lo había dicho.** ▪ El Ministerio Público llamó la atención al hecho de que el TPI ordenó citar a la oficial probatorio y que aquélla aclaró que la perjudicada no había solicitado empleo, que ella fue a la oficina porque el recurrido la mandó a llamar, **y que eso había sido precisamente la versión de la perjudicada desde el inicio del juicio.** ▪

Añadió el Ministerio Público que inconsistencias en los informes presentencia se veían todos los días, pero lo que no se veía era que eso sirviera para celebrar un nuevo juicio, que era lo que se pretendía hacer en este caso. ▪ Sugirió al TPI que no debía servirse de esta vista que había celebrado para reconsiderar su fallo de convicción del recurrido por haber encontrado inconsistencias entre el informe y sus anotaciones. ▪ Comentó el hecho de que no se había pedido reconsideración ni se había hablado de nueva prueba que ameritara solicitud de nuevo juicio, sino que sólo se había hablado del informe presentencia. ▪ Añadió que el récord estaba huérfano de una solicitud de reconsideración del fallo por el recurrido. ▪ **También comentó que los casos tienen que terminar, y los casos criminales,** los vistos por jurado terminan cuando se rinde un veredicto válido; **los vistos por tribunal de derecho terminan cuando se rinde un fallo válido.** ▪

Por su parte, la defensa indicó que no había dispuesto un término específico para reconsiderar un fallo que, más bien, sólo se ha indicado que ello se haga dentro de un **período razonable.** Añadió que, en este caso, ese período se dio a partir de la fecha en que el tribunal tuvo el beneficio de recibir el informe presentencia y los abogados tuvieron oportunidad de examinarlo el 26 de enero de 2007. ▪ Indicó que el informe sólo tenía un error y era la omisión del "*no*". **Destacó que el TPI tuvo la oportunidad de ver nuevamente a la perjudicada en silla de los testigos y que pudo observar que aquélla mintió.** ▪

**El TPI concluyó que vio a la perjudicada, escuchó su testimonio y que no le causaba satisfacción;** que en todo momento, la perjudicada había negado el asunto de que había solicitado empleo al recurrido e **indicó que los testimonios que había descartado durante el juicio cobraron otro sentido para él.** Agregó que no creía que el procedimiento que celebró era ilegal o contrario a derecho porque el tenía la obligación precisamente de dormir tranquilo con su conciencia. ▪ Finalmente, y en síntesis, el TPI determinó que en virtud de la prueba que se desfiló durante el juicio y en la vista posterior que se había celebrado, reconsideraba el fallo de culpabilidad que había pronunciado contra el recurrido.

De esta determinación acudió ante nos el Ministerio Público. Los señalamientos de error que esbozó en su escrito se circunscriben a cuestionar la corrección del procedimiento llevado a cabo por el TPI, el cual culminó con la absolución del recurrido aun cuando ya mediaba un fallo de culpabilidad. En términos generales, el Ministerio Público cuestionó que se reconsiderara el fallo condenatorio basándose en el contenido del informe presentencia, y ello, en una etapa procesal en la que lo que correspondía era el pronunciamiento de sentencia. Se cuestionó que, habiendo concluido el juicio, se citaran testigos y se celebrara un procedimiento para dirimir si procedía la reconsideración del fallo condenatorio sin que hubiera mediado solicitud de alguna de las partes.

Tomando en cuenta lo anterior, y sirviéndonos del derecho aplicable, llegamos a las siguientes conclusiones.

## II

En la actualidad, el mecanismo de la moción de reconsideración al fallo no está contemplado expresamente por alguna de las Reglas de Procedimiento Criminal. No obstante, la jurisprudencia se encargó de dar luz sobre la naturaleza y alcance de esta figura. En el caso *Pueblo v. Valdés Sánchez*, 140 D.P.R. 490 (1996), se cuestionó si un juez que dictaba un fallo condenatorio en un caso criminal, quedaba irremediablemente atado al mismo, sin poder modificarlo, aunque se convenciera posteriormente, en virtud de una moción de reconsideración radicada oportunamente por el acusado, que el fallo era equivocado y que procedía dictar sentencia absolviendo al acusado.

En el citado caso, el peticionario planteó que la controversia no giraba en torno a la reconsideración de la sentencia que disponía la pena a imponerse, sino del fallo de culpabilidad. Fundó su planteamiento en lo dispuesto en la derogada Regla 216(b) de Procedimiento Criminal. ■ Aquél, adujo que un juez tiene la facultad inherente para reconsiderar un fallo de culpabilidad y que se violan los más elementales principios de justicia y el debido procedimiento de ley si se le niega esa facultad.

En su análisis, el Tribunal Supremo trajo a colación el hecho de que la referida Regla 216 de Procedimiento Criminal era la que regulaba lo concerniente a las apelaciones ante el Tribunal Superior de sentencias dictadas por el ya extinto Tribunal de Distrito. Se indicó que, en su inciso (b), la referida regla disponía que: '

*"La apelación se formalizará presentado un escrito de apelación o una solicitud de juicio de novo en la secretaría de la sala del Tribunal de Distrito en que se celebró el juicio, previa notificación del mismo al Ministerio Público [...] dentro del término de diez (10) días, contados a partir de la fecha en que la sentencia condenatoria fuere dictada. Si se solicitare la reconsideración de la sentencia, el término para radicar el escrito de apelación quedará interrumpido y el mismo comenzará a partir de la fecha en que se archive en autos la notificación de la resolución del tribunal negando la reconsideración. [...]".* Id., pág. 495. (Énfasis en el original).

Prosiguió el Tribunal Supremo indicando que aunque del texto de la referida regla no surgía que se estuviera proveyendo expresamente un mecanismo para que un juez pudiera variar o dejar sin efecto un fallo, **sí se reconocía implícitamente la facultad de éste para reevaluar la sentencia emitida a través de una moción de reconsideración.** Añadió que, a pesar de que en el texto se utilizaran los términos *"sentencia condenatoria"* y *"sentencia"*, **debía interpretarse que estos términos también incluían *"el fallo de culpabilidad"*,** ya que en apelación se puede revisarse este asunto. **También se aclaró que la reconsideración lo que persigue es que el foro de instancia reevalúe su posición a la luz de los señalamientos que se le expongan, sin necesidad de acudir a un foro apelativo para ello.** Id.

**El referido foro concluyó que la reconsideración se extendía a los méritos de la controversia en un proceso penal, esto es, a la determinación o fallo de culpabilidad del acusado.** Más aún, estableció que un juez de distrito tenía la facultad para reconsiderar un fallo condenatorio **si, inmediatamente o en un término razonablemente corto después de hecho tal pronunciamiento, así se le solicita.** Id., páginas 496-497.

Un lenguaje similar al de la referida Regla 216 de Procedimiento Criminal aparece en la vigente Regla 194 de Procedimiento Criminal y en la Regla 23 del Reglamento del Tribunal de Apelaciones. En ambas reglas se trae a colación el supuesto en que una de las partes involucradas en un caso criminal presenta una solicitud de reconsideración en relación a una sentencia. En particular, la Regla 23 de nuestro Reglamento hace alusión al efecto interruptor que una moción de reconsideración fundada en la Regla 194 de Procedimiento Criminal puede tener respecto al término para presentar una apelación de cualquier *"sentencia final"* dictada en un caso

criminal por el Tribunal de Primera Instancia. Se dispone que en el caso de que se presentare una moción a estos efectos, el término para presentar la apelación comenzará a decursar dentro de los treinta (30) días siguientes a que se notificare al acusado la orden del tribunal adjudicando la moción de reconsideración.

De todo lo anterior cabe inferirse la innegable existencia y utilidad del mecanismo de la reconsideración dentro del procedimiento criminal. Más aún, también debe quedar claro que el referido mecanismo se extiende no sólo a las *"sentencias finales"* que disponen lo concerniente a la pena, sino que puede utilizarse respecto a un fallo. Así debe interpretarse al hacerse extensivo el pronunciamiento del Tribunal Supremo en el citado caso de *Pueblo v. Valdés Sánchez, supra.*

Agréguese que la determinación de equiparar al fallo con una sentencia final para efectos de una reconsideración o de una apelación quedó reafirmado en *Pueblo v. Rodríguez Meléndez*, 150 D.P.R. 519 (2000). En este último caso se consignó que el fallo es el dictamen que pone término al proceso criminal, siendo la culpabilidad o inocencia del acusado lo crucial en un procedimiento penal. *Id.* Además, se reconoció que el *"fallo"* refiere al pronunciamiento hecho por el tribunal condenando o absolviendo al acusado, Regla 160 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 160. Por otro lado, se tomó cuenta de que se ha definido *"sentencia final"* como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa. *Id.*, pág. 522.

Tomando en cuenta lo anterior, llamamos la atención al hecho de que en el discutido caso de *Pueblo v. Valdés Sánchez, supra,* medió una solicitud de reconsideración por parte de la representación legal del acusado, en corte abierta, inmediatamente después de haberse pronunciado el fallo condenatorio. También advertimos que en las discutidas reglas se menciona como presupuesto previo a la reconsideración la presentación de una moción a esos efectos. Lo anterior, en principio, parece apoyar la teoría de que para que un tribunal pueda reconsiderar un fallo, debe haber mediado una solicitud a esos efectos, y ello, con marcada inmediatez al pronunciamiento de la determinación en cuestión.

**No obstante lo anterior, entendemos que los tribunales tienen un poder inherente para reconsiderar sus determinaciones, a solicitud de parte o *motu proprio*, siempre y cuando conserven jurisdicción sobre el caso.** En el caso ante nuestra consideración, le reconocemos esta facultad al TPI, pero sin obviar aclarar las siguientes consideraciones. Particularmente, detallamos los aspectos del procedimiento que sirvió para la reconsideración del fallo condenatorio. Dicho procedimiento, concluimos, no fue adecuado.

En el caso que nos ocupa, el TPI insistió en que el procedimiento que llevó a cabo estaba motivado por su inquietud de si debía o no reconsiderar el fallo condenatorio que rindió originalmente. Lo anterior, motivado por la inquietud que le creó cierta información contenida en el informe presentencia. Habiendo formulado su preocupación, la representación legal del recurrido se limitó a indicar que *"venían"* con la intención de solicitar la reconsideración del fallo, mas no lo hicieron propiamente. Esto último, lo hicieron una vez advinieron en conocimiento de la preocupación del juzgador.

Por su parte, el TPI tomó la iniciativa de citar *"personalmente"* testigos y comenzar un proceso en el que, a fin de cuentas, terminó por pasar juicio nuevamente sobre la credibilidad (veracidad o mendacidad) del testimonio de la perjudicada. Tomando en cuenta el *demeanor* de la declarante, dicho testimonio le había merecido entera credibilidad al TPI y así lo había expresado de manera categórica cuando finalizó el juicio. Pero después de emitido el fallo, y en la fase procesal de preparación del informe presentencia previo al pronunciamiento de sentencia, el TPI indicó que cierta parte del referido informe le provocó duda sobre un aspecto fundamental del testimonio que prestó la perjudicada. Indicó el referido foro que lo redactado en el informe parecía ser contrario a lo que aquélla había declarado durante el juicio.

No obstante, surge de la transcripción que el TPI reconoció que el texto que alegadamente le creó duda

podía estar mal redactado. Además, el error en la redacción del informe fue confirmado por el testimonio de la oficial probatorio que redactó el borrador del informe y que realizó la entrevista a la perjudicada. En el procedimiento que celebró el TPI se aclaró que la posible interpretación que según el juzgador podía inferirse del texto del informe presentencia no era correcta. A nuestro juicio, la información y prueba que se evaluó en la vista posterior al fallo confirmó el testimonio que la perjudicada vertió durante todo el procedimiento. Se disiparon satisfactoriamente las alegadas incongruencias entre lo que declaró la perjudicada en el juicio con las expresiones suyas que se consignaron en el informe presentencia.

Reconocemos la facultad que tenía el TPI para reconsiderar su fallo. Ello, con el objeto de corregir algún error que entendió hubiera cometido y que no fuera cónsono con los fines de la justicia. **Pero el descargo adecuado de esta facultad presuponía que reconsiderara su determinación basándose en la prueba que se desfiló durante el juicio.** Sin embargo, en el procedimiento que celebró el TPI, reevaluó testimonios que aquilató durante el juicio basándose, no en la prueba que se desfiló en el juicio, tampoco en prueba nueva que hubiera podido ser óbice para un nuevo juicio, sino en información contenida en el informe presentencia. En relación a lo anterior, entendemos que el TPI se sirvió incorrectamente del informe presentencia para dirimir cuestiones que exceden los objetivos de dicho documento.

La información que se recopila para incluirse en un informe presentencia refiere al análisis de los antecedentes familiares e historial social del convicto, y además, al efecto económico, emocional y físico que causó en la víctima y su familia la comisión del delito. ▋ Esta información pretende cumplir con un objetivo distinto al de la prueba que se desfila durante el procedimiento criminal. **La información contenida en el informe presentencia no debe utilizarse para reevaluar asuntos relacionados a la culpabilidad o inocencia del ya convicto, más bien sirve para tomar determinaciones sobre la forma en que se podrá extinguir la pena correspondiente al delito que se probó fue cometido.** Así, se podrá determinar si el convicto deberá cumplir su pena en reclusión o si puede beneficiarse de cumplir su pena en probatoria o sentencia suspendida.

Además de lo anterior, como se indicó antes, los supuestos en que originalmente basó sus dudas el TPI, fueron aclarados en la vista. También, ese informe que sirvió de base para reconsiderar su fallo fue uno cuyo proceso de preparación, redacción y presentación estuvo plagado de irregularidades. Más aún, se pusieron en evidencia ciertas deficiencias del informe, particularmente, provocadas por la omisión de información básica que se requiere incluir en este tipo de documento. Súmese que se pidió la presentación del informe sin el beneficio de la evaluación que realizaría el personal del programa para agresores sexuales al recurrido. Advertimos que la fecha en que se le citó para esa evaluación, inexplicablemente, era posterior al señalamiento que se pautó originalmente para el pronunciamiento de sentencia.

Por último, es preciso señalar que las manifestaciones que ha vertido para récord el TPI en este caso, han radiografiado su proceso mental. Ello, en gran medida, nos ha permitido concluir que varió su fallo, no por haber evaluado o analizado nuevamente la prueba que sirvió para determinar inicialmente la culpabilidad del recurrido, sino que reconsideró su fallo con información y prueba que se desfiló en un procedimiento ulterior -habiendo concluido ya el juicio- con información o prueba que no cumplió con los supuestos de prueba que ameritara la celebración de nuevo juicio, y que además, fue vertida en un contexto distinto a la prueba que sirvió de base para la determinación de culpabilidad original.

### III
En mérito de lo anterior, expedimos el auto solicitado, dejamos sin efecto el fallo absolutorio emitido en reconsideración y devolvemos el caso al TPI para que una vez se complete satisfactoriamente el informe presentencia, se proceda al pronunciamiento de la misma.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones